## HENRIETTA KALTEYER v. D. SULLIVAN ET AL.

Delivered March 16, 1898.

**1. Streets—Power of City Over.**

The power conferred on a city to regulate or abolish streets and alleys does not empower it to authorize an individual to close any part of a public highway and appropriate it to his own use.

**2. Same—Closing Street a Nuisance.**

A city which, without pretense of authority and in direct violation of the statutes, assumes to grant a private individual the right to obstruct a public highway while in the transaction of his private business must be regarded as maintaining a nuisance so long as the obstruction is continued by reason of such license.

**3. Same—Remedy of Abutting Owner.**

The owner of land abutting upon a street or alley, one end of which is obstructed so that he can not have egress from his property to other streets in that direction, suffers an injury peculiar to himself by reason of the public nuisance, which entitles him to injunctive relief.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*Geo. C. Altgelt,* for appellant.

*Ogden & Terrell,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was instituted by the appellant, Henrietta Kalteyer, on the 23d day of November, 1896, against appellees, D. Sullivan and the city of San Antonio, for an injunction to restrain appellees from obstructing and closing a public alley in the rear of a lot owned by appellant. It was alleged that the alley was dedicated as a public thoroughfare in 1852; that its dedication as such was accepted by the city of San Antonio; that it had been used by the public as such continuously ever since it was so dedicated, and that the improvements upon appellant's lot, consisting of dwelling-house and usual appurtenances, were made in reference to said alley and upon the faith of its continuous existence.

Appellant also alleged the use of the lot as her residence homestead; the necessity for the alley for the ingress and egress of vehicles to and from her premises; the ownership by Mr. Sullivan of adjoining lots held by him under the dedicator; notice on his part of the existence of the alley when he purchased his lots; the obstruction of the alley by him, under authority of the city council of San Antonio; the refusal of her

application to the council for relief, and the continuance of the obstruction to her special injury.

She prayed for a mandatory injunction enjoining and restraining Mr. Sullivan from closing or obstructing said alley and requiring him to remove the fences and obstructions thereon.

The city of San Antonio answered by general demurrer and general denial, and alleged that if the unlawful acts were done as charged, they were at the instance of its codefendant, and prayed, if judgment was rendered against it, that it have judgment over against him.

Appellee, Sullivan, answered by general demurrer and general denial; and specially that he owned lots 1, 2, 3, and 8 of the block in which appellant's property is situated, that there is another alley which is twenty feet wide running from Avenue D half way through said block intersecting the alley in controversy. That the alley involved in this action is ten or twelve feet wide, and runs between his property—lots 1, 2, and 3 abutting on one side thereof and lot 8 immediately opposite them on the other. That in making certain improvements on his lots, in course of construction, it was necessary for him to use the alley in hauling and storing material, and that fearing the placing of material upon the alley might be dangerous to the public or some individual unless the portion of the alley on which it was placed was closed, he, on the 5th day of October, 1896, petitioned the city council of the city of San Antonio for leave to close the portion of the alley between his lots in order that the same might be used for placing such material thereon; and that permission was then granted him by the council to close said alley for that purpose. That appellant protested against the action of the council in granting him such authority, and, on the 15th day of November, 1896, his petition was again granted by the council upon condition that gates be put at both ends of that portion of the alley lying between his lots, the same to be removed at the order of the city council, at any time it might see proper to make such order. That in accordance with said order of the council he has placed gates at each end of said part of the alley, which gates he is maintaining with the permission of the city, subject to be removed at the order of the city council; that said portion of the alley is being used for the purpose of placing building material, and that the inclosed part of the alley does not touch appellant's property, nor the property of anyone save his own.

That appellant has full and free access to her property both by way of the uninclosed portion of the alley and the one running from Avenue D, half way through the block to said alley, and that the temporary closing of the part of the alley touched by his lots does not impair to any substantial or material extent appellant's right of ingress or egress, nor in any manner injure her or her property. And that he is ready and willing at any time to remove from the alley any obstructions placed thereon by him, whenever so ordered by the city council of the city of San Antonio.

By a supplemental answer filed December 7, 1897, appellee Sullivan

alleged that he required said alley for further material taken out of a wooden stable and old buildings; that he was about to begin the construction of a large two-story addition to his residence, and that the alley was necessary for the handling of building material, and that he was still maintaining the gates in the alley under the authority of the council, and that he was storing material thereon, etc.

The case was tried by the court without a jury, and the trial resulted in a judgment for appellees. From which judgment Mrs. Kalteyer prosecutes this appeal.

*Conclusions of Fact.*—This shows the block of which the lots of appellant and appellee Sullivan are a part. Lots 1, 2, 3, and 8 shown thereon are owned by appellee and lot 4 by appellant. The alley which is shown to extend from Fourth to Fifth Streets is closed from its intersection with the former street to where it is intersected by the alley extending from Avenue D. The diagram is a part of a map of Alamo City, now a portion of the city of San Antonio, planned for a manufacturing town by Anthony M. Dignowity, who then owned the land. The map was drawn by J. Varian Smith, in 1852 and 1853, who surveyed and laid off the proposed manufacturing town. The alley shown to extend entirely through the block begins at Travis Street and runs through the blocks between Avenues C and D, across Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Streets and ends at Tenth Street. This alley has been constantly used by the public as a highway

from at least as far back as 1857 down to some time in December, 1896, when it was closed as above stated by appellee Sullivan.

The appellant's chain of title to lot 4 consists of deeds from Anthony M. Dignowity down to her. Each of the deeds refers to the map of Alamo City, planned for a manufacturing town by Anthony M. Dignowity and surveyed by J. Varian Smith in 1852 and 1853, for identity of the property conveyed. The appellee holds lots 1, 2, and 3, and his wife lot 8, in same block under a like chain of title from A. M. Dignowity to themselves, their deeds making the same reference to map of Alamo City for description.

The appellant purchased lot 4 of block 16 from George and Mary T. Monday on January 30, 1885, for $4500, the lot being valued at $1500 and the house on it at $3000. The house was built by appellant's grantors, and is about twenty feet from the front line of Avenue C and about five feet from both north and south lines of the lot. The house was built with the expectation of getting into the yard with a carriage or wagon through the alley upon which appellant's and Mr. Sullivan's property abuts.

It is admitted that appellant owns said lot 4, and that a copy of said map of Alamo City, made for Anthony M. Dignowity, was deposited in the office of the city engineer of the city of San Antonio, and that it is identical with the one introduced in evidence by appellant, from which the above diagram was made.

On the 5th day of October appellee D. Sullivan addressed a written petition to the mayor and city council of the city of San Antonio, which is as follows:

"To the Honorable Mayor and City Council of the City of San Antonio: The undersigned, D. Sullivan, would respectfully show to your honorable body that he is constructing a building on a lot owned by him, adjoining the alley in block 10, said alley lying between lots 1, 2, 3, and 8 in said block.

"That all of said lots 1, 2, 3, and 8 in block 10 belong to your petitioner, and that in the construction of the building the alley is necessarily used in handling material, etc., and inasmuch as this alley is not used by any other residents or property owners in said block, as your petitioner owns the property on both sides of same, he would most respectfully ask permission to close the alley, and your petitioner begs to submit with this petition the accompanying consent of adjacent property owners. Respectfully submitted,

(Signed)                                   "D. SULLIVAN."

This petition was granted on October 5, 1896.

On the 26th day of October, 1896, the appellant filed a protest and argument against the action of the council in granting appellee Sullivan permission to close said alley, and prayed that its order granting such permission be rescinded. Her protest was referred to the proper committee, the majority of which reported in favor of granting her prayer,

and rescinding said order. But the minority report of the committee "recommended that Mr. Sullivan's petition be granted, provided gates be put at both ends of the alley, subject to removal by the city council at any time they think proper to do so." This minority report was adopted on November 10, 1896, by the city council. Since that time the part of the alley, as before indicated, has been closed by Mr. Sullivan, appellant and the public excluded therefrom, and it appropriated to the exclusive use and benefit of said appellee. There is no evidence in the record to indicate that this closing the alley is temporary. On the contrary, Mr. Sullivan, as a witness upon the trial of the case, avowed his purpose of keeping it closed for his private use until he should be ordered by the council to remove the gates erected by its permission.

*Conclusions of Law.*—Upon the above facts, which are clearly established and are practically uncontradicted, we have concluded that it is our duty to reverse the judgment of the trial court and enter here such judgment as it should have rendered. Without an extended discussion, we will recite the principles of law applicable to the facts which have led us to this conclusion.

A way over land set apart for public travel in a town or city is a street, no matter what it may be called; it is the purpose for which it is laid out and the use made of it that determines its character. "Street" is a general term, and includes all urban ways which can be, and are, generally used for the ordinary purposes of travel. A narrow way, less in size than a street, is generally called an alley; and if the alley is a public one, it is a highway, and in general, is governed by the rules applicable to streets. Elliot on Roads and Streets, 12, 13.

The old maxim, "Once a highway always a highway," still holds good so far as concerns the rights of abutters, or others occupying a similar position, who have lawfully and in good faith invested money or obtained interests in the just expectation of the continued existence of the highway. Id., 658. An abutting owner has rights not shared by the public at large, special and peculiar to himself, which arise out of the very relation of his lot to the street in front or alley in the rear of it. These rights are property, and as such are as sacred from legislative invasion as his right to the lot itself. Dill. Mun. Corp., sec. 656a; Story v. Elevated Railway, 90 N. Y., 146; Railway v. Heisel, 38 Mich., 62; Adams v. Railway, 39 Minn., 286; 1 L. R. A., 496. The abutting owner's right of access to and from the street, subject to legitimate public regulations, is as much his property as his right to the soil within boundary lines. And when he is deprived of such right of access or any other easement connected with the use and enjoyment of his property, other than by the exercise of legitimate public regulation, he is deprived of his property. 2 Dill. Mun. Corp., sec. 487b.

When it is asserted that the Legislature has plenary power over municipal streets it must be understood that it has power over them as streets, for it can not be justly affirmed that it may deprive them of the

character of streets to the special injury of abutters without yielding them fair compensation for the loss actually sustained. Elliott on Roads and Streets, 19.

The city council of San Antonio can have no more power over the streets of the city than is granted by the Legislature, nor can the Legislature grant such power as would in its exercise by the council damage the property of an abutting owner, without providing adequate compensation for such damages. The power vested in the Legislature over public highways, which it may delegate to towns and cities over streets within their limits, is for the benefit of the public, and should by municipalities be always exercised in furtherance of the purpose for which it is conferred. When the representatives of the corporation upon whom this power is conferred close a highway against the use and to the detriment of the public, and turn it over to a private individual for his private use, they pervert the law, and violate the trust which it is their duty to faithfully execute. Section 57 of the charter of San Antonio which confers upon its council exclusive power over the streets, alleys, sidewalks, lanes, avenues, and public grounds and highways of the city, and to abate and remove encroachments thereon; to open, alter, widen, straighten, extend, establish, abolish, regulate, grade, regrade, pave, macadamize, or improve the same, to put drains and sewers therein to prevent the incumbering thereof in any manner and to protect the same from encroachments or injury, confers no authority upon the council, nor gives it even a pretext for authorizing an individual to close any part of a public highway and appropriate it to his own use. The public and the individuals composing it have a right to look to the council for protection against such an appropriation of property dedicated to their use, and not to expect their trustees to become aiders and abettors of an individual in excluding them from and depriving them of the use of their highways.

When a city without pretense of authority, and in direct violation of statute, assumes to grant to a private individual the right to obstruct a public highway, while in the transaction of his private business, it must be regarded as maintaining a nuisance, so long as the obstruction is continued by reason of such license. Cohen v. New York, 113 N. Y., 532. "The king can not license the erection or commission of a nuisance; nor in this country can a municipal corporation do so by virtue of any implied or general powers. A building or other structure of a like nature, erected on a street without the sanction of the Legislature, is a nuisance, and the local corporate authorities of a place can not give a valid permission thus to occupy streets without express power to this end conferred upon them by charter or statute. The usual power to regulate and control streets has ever been held not to authorize the municipal authorities to allow them to be encroached upon by the adjoining owner by erections made for his exclusive use and advantage." 2 Dill. Mun. Corp., sec. 660. And it is well settled that equity will grant relief to a party entitled to a right of way over a street and protect him in the enjoyment thereof by

restraining the erection of obstructions thereon. Id., sec. 661. The owner of land abutting upon a street or alley, one end of which is obstructed so that he can not have egress from his property to other streets in that direction, suffers an injury peculiar to himself by reason of the public nuisance (Bannon v. Murphy, 38 Southwestern Reporter, 890), and is entitled to such relief.

That the obstructions placed in the alley upon which appellant's property abuts by appellee Sullivan are temporary, can not be maintained in view of the facts in this case. They were placed there fourteen months before this case was tried. There they have continuously remained, and the portion of the alley between the gates appropriated to Mr. Sullivan's private use, to the absolute exclusion of appellant as well as the public. If the city council should never order the obstructions removed, the testimony of appellee indicates they will remain there forever, unless relief should be granted appellant in this suit. If it is the purpose of the city council to order them removed and the alley restored to the use for which it was dedicated, when will it make an order? Having failed to do its duty and violated its trust in the first instance, no presumption can be indulged that it will cause to be restored to the public the use of its highway, now wrongfully withheld under the sanction of the municipal authorities of the city of San Antonio.

The judgment of the District Court is reversed, and judgment is here entered in favor of appellant, vacating and holding for naught the order of the city council which assumes to grant appellee Sullivan the right to close the alley referred to, and perpetually enjoining and restraining appellee Sullivan from closing or obstructing said alley or any part thereof. And it is ordered that a mandatory injunction issue against appellee Sullivan, requiring and compelling him to remove the gates and all obstructions placed in said alley by him or under his authority, and that he be forever restrained from in any way or manner obstructing said alley, or from hindering or in any way interfering with appellant in her right to use said alley in connection with her property, or as a member of the public.

The costs of this court, as well as the costs of the court below, are adjudged against the appellee, D. Sullivan.

*Reversed and rendered.*

Writ of error refused.