CURETON, C. J. The opinion of the Commission of Appeals answering the certified question is adopted, and ordered certified to the Court of Civil Appeals.

---

### DALLAS COTTON MILLS v. INDUSTRIAL CO. et al. (No. 555–4038.)

Commission of Appeals of Texas, Section A. June 22, 1927.

1. **Easements** ⬉17(4)—Purchaser with reference to plat making dedication of streets acquired right of way over streets, which was property that could not be taken back by vendor or resold.

Where common grantor subdivided land and by instrument duly recorded defined boundaries of various portions and dedicated certain public streets, *held* purchaser of land by direct reference to dedicatory plat acquired a right of way over the land described as being in street, which right was property that vendor could not take back or transfer to a second vendee.

2. **Eminent domain** ⬉13, 67—For taking of property for public use to be lawful, use must be public use in fact; mere fiat pronounced by Legislature does not make that public use which is not so in fact (Bill of Rights, § 17).

For taking, destruction, or damage of property, for or on account of public use, to be lawful, under Bill of Rights, § 17, the professed use must be a public one in truth, and mere fiat pronounced by Legislature or subordinate agency does not make that a public use which is not so in fact.

3. **Easements** ⬉17(4)—Purchaser of land by reference to plat showing dedicated streets acquired right to use street, precluding another grantee from closing street on its being vacated by city.

Where plaintiff purchased land by direct reference to plat filed, showing dedication of certain streets, he thereby acquired a right of way over such streets, such that another grantee of lots on both sides of street could not close it to plaintiff's use on city's vacating it as a public street.

4. **Municipal corporations** ⬉657(7) Ordinance vacating public street held not to show purpose to physically close it to plaintiff's use.

Where plaintiff purchased property by direct reference to plat showing dedicated streets, thereby acquiring property right to use streets so dedicated, *held* ordinance of city "vacating" portion of such street and abandoning all control, jurisdiction, and dominion over it as a public street did not show a purpose to physically close the street to plaintiff's use or warrant injunctive relief.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Dallas Cotton Mills against the Industrial Company and others. Judgment for defendants was on appeal affirmed by the Court of Civil Appeals (252 S. W. 821), and plaintiff brings error. Judgments of district court and Circuit Court of Appeals affirmed in part, and reversed in part, and rendered.

Coke & Coke, of Dallas, for plaintiff in error.

J. J. Collins and H. S. Grady, both of Dallas, for city of Dallas.

Seay, Seay, Malone & Lipscomb, of Dallas, for other defendants in error.

NICKELS, J. The Dallas Cotton Mills, plaintiff in error, owns a block of land in the city of Dallas, bounded on all four sides by streets which furnish outlets through connecting highways to all portions of the city. Just north of this block and separated from it by Barnett street, which runs east and west, the defendant in error Industrial Company owns two blocks, and also owns two other blocks just north of these and separated from them by what is known as Dexter street—South Lamar street running north and south connects with Barnett street just north of the north boundary line of the block owned by plaintiff in error at or near its center, and separates the four lots owned by the Industrial Company, with two lying east and two west of South Lamar street.

The property of both Dallas Cotton Mills and the Industrial Company is a part of a tract of land formerly owned by the Dallas Cotton & Woolen Mills, a corporation, and was by said last-named corporation surveyed and platted into an addition to the city of Dallas, and a plat thereof, together with the dedication to the city of the streets and avenues shown thereon, was duly executed, acknowledged, and filed by it for record and recorded in the Deed Records of Dallas county on November 8, 1888. That part of South Lamar street which separated the blocks owned by the Industrial Company was shown on said plat, and both it and the Dallas Cotton Mills held and owned their respective properties by conveyances under said dedicator.

By its charter, authority was conferred on the city of Dallas "to lay out, establish, open, alter, widen, lower, raise, extend, grade, narrow, care for, pave, supervise, maintain, and improve streets, alleys, sidewalks, squares, parks, public places, and bridges, and to vacate and close the same * * * and to vacate and close private ways."

The city, through its board of commissioners, decided to change the course of South Lamar street by turning same diagonally across the two blocks east and connecting it with Cockrell avenue near the northeast corner of the block owned by the Dallas Cotton Mills. Cockrell avenue bounds the block

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the Dallas Cotton Mills on its east, and lies practically parallel with Lamar street. Accordingly, an arrangement was made with the Industrial Company to secure from it by deed a right of way across its two lots in order to effect this change, in consideration of the city paying it $2,800 cash and vacating this portion of South Lamar street from the point of divergence to Burnett avenue, together with another street and alley running between and through the said blocks owned by the Industrial Company.

Dallas Cotton Mills presented to the district judge of the Sixty-Eighth judicial district its petition alleging that the city of Dallas and the Industrial Company, defendants in error, intended to and, unless restrained, would physically close and obstruct that portion of South Lamar street above shown. It set out its purchase of its block of ground in said platted and designated addition, and alleged that by virtue thereof it acquired and owned an easement of way over the portion of South Lamar street sought to be closed; that this easement was property; and that it could not be deprived thereof by defendants in error in the manner attempted, and prayed that the city of Dallas and the Industrial Company be restrained and enjoined from physically closing South Lamar street and thus putting an end to and absolutely destroying its easement therein. Writ of temporary injunction was granted as prayed for and the petition filed in the district court December 13, 1922.

Defendants in error then answered and filed their motions to dissolve the injunction order. The city pleaded its charter power as justification for the ordinance, asserted that in passing the ordinances it had done all that it intended to do or had power to do in respect to the vacation or closing of the portion of Lamar street in controversy, and denied that it intended to or would undertake physically to close the same. The Industrial Company pleaded its claim of right, in virtue of being the owner of all land abutting upon that portion of the street and consequently owner of the fee therein, and in view of passage of the ordinances, to take possession of the street and to close the same in fact. Upon hearing the injunction, order was dissolved. Dallas Cotton Mills appealed, and the order of dissolution was affirmed by the honorable Court of Civil Appeals. 252 S. W. 921. Writ of error was allowed upon assignments presenting ownership by Dallas Cotton Mills of an easement of way in that portion of Lamar street to which the vacation proceedings by the city relate and deprivation of that property without compensation and without due process of law, to prevent which injunctive relief is proper.

The right which Dallas Cotton Mills asserts is not that of a way ex necessitate, or one incident to abutment, or one belonging to mere citizenship and grounded in possible endurement of special injury. Hence the honorable Court of Civil Appeals considered and gave disposition to the case upon an irrelevant theory, and the authority cited by it has no proper application. We thus negative a claim based upon ownership of attiguous property merely because the parties have done so and because, in view of conclusions reached as to other matters, existence vel non of fact basis for such a right is immaterial.

[1] The common source proprietor subdivided his land, and by instrument duly recorded defined boundaries for the various portions, and by dedication impressed upon the property now involved the character of a passageway. Dallas Cotton Mills and the Industrial Company bought with direct reference to this subdivisional and dedicatory plat. Acts of the parties, plus operation of law thereupon, had these consequences: (a) Right of way over the land described as being Lamar street was bought with a price by Dallas Cotton Mills; its existence, upon the showing made, pertained to the consideration, and (whether by affirmative transfer or through a species of reservation and estoppel) it inhered in or attached to the grant itself. Oswald v. Grenet, 22 Tex. 100; Lamar County v. Clements, 49 Tex. 354; City of Corsicana v. Zorn, 97 Tex. 322, 78 S. W. 924; Bowers v. Machir (Tex. Civ. App., writ denied) 191 S. W. 758; Elliott, Roads and Streets (2d Ed.) § 120; Lewis, Eminent Domain, § 91F. That which was thus a proper object of barter and became a part of the thing granted is property. Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288 (writ denied). (b) Sequently, the vendor could not take back that which it had sold, nor could it transfer to a second vendee a superior right. The subject-matter of purchase by Industrial Company passed to it burdened with the right of Dallas Cotton Mills. Ibid.

The common source proprietor also dedicated the land to the city of Dallas for highway purposes, and the dedication was accepted. But since concurrent approbation and reprobation is forbidden, the city could not take the good without taking it subject to the burdens stipulated, and the acceptance included recognition of such private rights as that so acquired by Dallas Cotton Mills. The right which the city acquired was that of a public easement; the right which the individual purchaser acquired was a private easement. The two could exist in contemporaneous and harmonious operation, or the one could be destroyed without necessary impairment of the other. The public easement is the thing over which the city has jurisdiction in virtue of its charter power to "lay out * * * alter, * * * main-

tain, * * * vacate, and close," etc., streets. Proper exertion of that authority would enable it to relinquish the public easement, but the private right would be left intact. Bowers v. Machir, supra. Consequently, if the city did nothing beyond abandonment of the land as a public street, its acts could not afford warrant for the Industrial Company's claim to exclusive use and possession of the land upon which the street is located.

In a preamble to the first ordinance two purposes are declared: (a) To change the course of Lamar street so as better to accommodate "travel" from "South Dallas into the commercial and business section" and to acquire land from the Industrial Company whereon to lay a street making the change in route. (b) To "vacate" that portion of Lamar street between the point of divergence (made by the new route) and Burnett avenue. Section 1 of the ordinance authorizes purchase of the new land, and in section 2 it is enacted that the portion of Lamar street now in question is "hereby vacated and the city of Dallas does abandon all control, jurisdiction, and dominion over the same as public streets," etc. In preambles to the second ordinance like purposes are declared, except that the words "vacated and closed" are substituted for the word "vacated" in expressing the "advisibility" of surrendering "jurisdiction and control" over the "dead-end" of Lamar street. In section 1 authority to purchase the new land is re-enacted, and in section 2 it is provided that the portion of Lamar street in question is "hereby vacated and closed as public streets." By section 3 the former ordinance is repealed.

The passage of the second ordinance is thus explained by the city in its verified pleading:

"* * * The city of Dallas passed such second ordinance in that it was intended that the portion of South Lamar street that was theretofore vacated should be closed to the public as a public street, and there was some doubt as to whether the language of the first ordinance was sufficient to make this purpose clear."

· The city's pleading contains these denials, disclaimers, and averments:

"City of Dallas denies that it has planned to or is now planning to physically close South Lamar street between Alexander avenue and Burnett avenue (i. e., the stretch in question); that said ordinance does not physically close the said street, and the city of Dallas has no intention and no further jurisdiction over said portion of South Lamar street and has no interest in who secures title to same, and to what use is made of same, and as to whether the same is actually closed or not; that the city of Dallas in law has no concern with such matters and is not planning and has not planned to physically close the portion of South Lamar street ordered vacated and closed as a public street, and that such matters do not concern the city of Dallas."

In our opinion, the language of the ordinance is subject to the interpretation put upon it in the city's pleading, and, so viewed, the ordinance does no more than relinquish the public easement, leaving the rights of Dallas Cotton Mills unaffected.

[2] If such were not the meaning of the words employed in the ordinance, its operation would be restrained to that purpose by superior law. A sine qua non of lawful taking, destruction, or damaging of property for or on account of public use (section 17, Bill of Rights) is that the professed use be a public one in truth. Mere fiat, whether pronounced by the Legislature or by a subordinate agency, does not make that a public use which is not such in fact, and the question (always present) as to the true nature of the use is one of law.

If the city's averments are to be credited, they exclude all possibility of the existence of a public use in the actual closing of the street. But if, in this respect, they are not to be given a conclusive effect, the absence of public interest in the matter is plain, nevertheless, for user of the old street as a passageway by Dallas Cotton Mills, and others entitled, manifestly cannot to any extent or in any way burden, retard, or prevent accomplishment of the declared purpose of altering the route of "travel" from "South Dallas into the commercial and business section," which, together with relinquishment of the public easement, is the only "public purpose" claimed. Whether physical closing of the street, in relation to Dallas Cotton Mills, should be classed as a "taking" of its property or as a "destruction" or a mere "damaging" thereof, it would be forbidden because the action would not be for or on account of the "public use."

[3] The Industrial Company therefore did not, either by purchase or through action of the city, acquire right to exclude Dallas Cotton Mills from use of Lamar street as a passageway or to obstruct such use, and injunctive relief against it was proper.

[4] The second ordinance contains language which might well lead the citizen to believe that it was the purpose of the city physically to close the street, and if it had been enacted before the suit was filed injunctive relief would have been proper as against the city, for, in that event, its officials would have been held to have meant what they said. Wright v. Allen (Tex. Civ. App., writ denied) 257 S. W. 980, 986. But when the suit was brought the ordinance then in force did not include words conveying such a threat, and, since the true meaning of the second ordinance is such as we have given it and the record negatives a threat in fact upon the part of the officials, we believe the order vacating the injunction as against the city was proper.

Accordingly, we recommend that the judg-

ment of the district court be reversed in so far as same orders dissolution of the injunction order theretofore entered in the cause as to the Industrial Company, defendant in error, and that the judgment of the Court of Civil Appeals be reversed as to its affirmance of such portion of the district court's judgment, and that judgment be now rendered in favor of Dallas Cotton Mills, plaintiff in error, and against the Industrial Company, defendant in error, overruling the motion of the latter company to dissolve said former injunction order, and that in all other respects the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.